## Hillert, et al. v. Harned.

(Decided March 18, 1911.)

## Appeal from Nelson Circuit Court.

1. Contracts—Breach—Aiction for Damages—Evidence.—Plaintiff charged that defendants had purchased of him certain cattle for their joint account, and had refused to receive and pay for them. He brought this action to recover damages. Only one of the firm was served with process. Held upon an examination of the record that there was sufficient evidence to justify the submission of the case as to R, but as there was no evidence tending to show a partnership or that he acted as agent for C the court should have given a peremptory instruction as to C.

2. Statute of Frauds—Debt of Another—Verbal Promise to Pay.—A verbal promise of a member of a firm to pay for cattle purchased by another who had no authority to bind the firm, either as agent or partner, is within the statute of frauds.

3. Joint Verdict—Undisclosed Agency.—The jury having returned a joint verdict against R. and another and having stated in their verdict that it was rendered pursuant to an instruction based upon the theory that R. was the undisclosed agent, a judgment based upon the verdict will not be permitted to stand, it appearing that there was no evidence of such agency and that the verdict may have been induced by a statement which not being made in R.'s presence was not admissible as to him.

NAT W. HALSTEAD for appellants.

JOHN A. FULTON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Appellee, Ben S. Harned, claiming that D. J. Russell and the firm of W. R. Crawford & Company, composed of W. R. Crawford, Theo. Hillert and Fred Vogelback, purchased of him, for their joint account, fifty-two head of cattle at 6¼ cents per pound, and that they failed and refused to receive and pay for the cattle, brought this action against them to recover damages in the sum of $800.00. The only member of the firm of W. R. Crawford & Company who was served with process was Theo. Hillert. He and D. J. Russell denied the allegations of the petition. The trial resulted in a verdict in favor of appellee for the sum of $800.00. From the judgment based thereon, Hillert and Russell appeal.

Appellants insist that the court erred to their prejudice in failing to award them a peremptory instruction. The consideration of this question will make it necessary to review the evidence at some length.

Appellee was the owner of fifty-two head of cattle. About three weeks prior to the transaction out of which this controversy arises, Russell, in company with J. K. Fowler, a neighbor of appellee, inspected appellee's cattle. Russell and Fowler agreed to buy the cattle if they could secure them on satisfactory terms. Fowler approached appellee on the subject. The latter priced the cattle at 6 cents per pound, but, before closing the trade, required that Fowler and Russell should put up $10.00 per head. Fowler communicated the price and condition to Russell, who, not being satisfied with the requirement to put up $10.00 per head, told Fowler to inform Harned that he would not take the cattle. Some few days later certain negotations took place between appellee and one Kennedy, representing Swift & Company, with reference to the purchase of the cattle at $6.30 per hundred. These negotiations fell through. Russell and Fowler knew of this fact. On June 26, 1908, Fowler called appellee over the 'phone and, representing that he was acting at the instance of Russell, offered to buy appellee's cattle at 6¼ cents per pound, the delivery to take place at appellee's scale, between July 15th and August 1st of that year. Appellee, having some doubt as to Fowler's authority to act in the premises, suggested that he call up Russell and state definitely the terms of the sale. This Fowler did, and reported to appellee that he had talked to Russell and the cattle were sold on the terms above set out. After reflecting upon the matter,

appellee remembered his failure to insert in the contract the condition that Russell was to put up $10.00 per head in cash. The next morning he went to town and asked Fowler if this was made a condition of the trade. Fowler replied that it was not. Appellee expressed regret that the $10.00 cash payment was not made a part of the trade. Fowler then suggested that appellee call upon Russell and discuss the matter with him. Appellee's statement with regard to what took place between him and Russell is as follows: "I said I understood he wanted to buy my cattle; and he said, 'I bought your cattle yesterday.' I saw he had proof enough to prove he had bought the cattle and I did not go any further. I asked him what about the consideration in the trade, and he said, 'Didn't Fowler tell you what I told him about that?' He said, 'I told him I would give my firm on the contract for these cattle.'" On July 6th, at which time the cattle market had declined, appellee went to Louisville. He says Russell was busy, and he did not talk with him. He claims that, being unable to talk to Russell, he went to the office of Crawford & Company, and there found appellant Hillert, a member of the firm. The following is the account he gives of the conversation he had with Hillert: "I went in and told him about the cattle trade, and told him I wanted him to make me safe upon it; that Dell (meaning Russell) had said he would do it, and he said he would remit for the cattle, or we would remit for the cattle." On July 27, 1908, appellee claims that he went to the stock yards and saw Russell, advised him that the last day for the delivery of the cattle was close at hand, and demanded to know what he proposed to do about it. Russell replied that he had lost a good deal lately in the purchase of cattle, and was unable to take and pay for appellee's cattle; that for that reason, appellee had better go ahead and handle them the best he could. On the same day appellee went to see Hillert, and the latter denied that he had ever said he would pay for the cattle, and claimed to know nothing about the contract. When appellee returned home, he made arrangements for shipping his cattle. On the morning of July 29, 1908, he, in the presence of J. K. Fowler, who had acted for Russell, weighed the cattle at the scales provided in the contract. He also had on hand cars in which to ship the cattle to Jersey City. After the cattle were weighed Fowler went to town and found there a letter

to him from Russell. This was in answer to a letter which appellee had written to Russell a day before wherein he claimed that he was going to hold Russell responsible on the contract. In this letter Russell told Fowler to see appellee and get him to hold the cattle for a few days, and he (Russell) would try and make arrangements to take them. The contents of this letter were communicated to appellee by his brother, and appellee immediately called Russell over the 'phone. He claims he then told Russell that he would hold the cattle for two weeks, but no longer. The cattle were held until the 12th day of August. They were then weighed on the scales agreed upon, in the presence of J. K. Fowler. The cattle weighed 70,945 pounds. Appellee's evidence is corroborated to a certain extent by that of J. K. Fowler. The evidence shows that, on July 31st and August 12th cattle were worth only 5 cents per pound. The difference between the contract price and the market price at the time fixed for delivery of the cattle, was, therefore, $886.81; appellee, however, sued for only $800.00.

Appellant Russell testified that he was a hired cattle salesman for W. R. Crawford & Company at the Bourbon Stock Yards in Louisville. He was employed solely for the purpose of selling cattle. He occasionally bought cattle on his own account, and W. R. Crawford & Company would guarantee in writing the loss thereon. They were, however, in no sense partners, and Crawford & Company would not share in the profits and losses, but got only their commissions when the cattle were sold. When he bought the cattle, Crawford & Company got the same commission on his cattle as they did on other cattle consigned to their stock yard. He had no authority to buy cattle for Crawford & Company. He claims that when Fowler called him up with reference to the cattle in question, and stated that appellee wanted to sell them at 6 1/4 cents, he asked Fowler what about the $10.00 per head, and Fowler replied that he had not said anything to appellee about that. He then heard no more about the matter until next day, when appellee called him over the 'phone and asked if Fowler had told him anything about the $10.00 per head that had to be put up on the cattle. He said no; that Fowler had not mentioned it, and that he did not propose to put up $10.00 per head on appellee's cattle or anybody else's cattle. Appellee said something about a contract, and he told him that he might give him

a contract, but that he did not consider that he had bought the cattle, and they would just pass the matter up. Afterwards, appellee called on him at the stock yards and brought up the matter of the sale of the cattle. He then told appellee that he had never bought his cattle and that appellee could do with them what he pleased. While he and appellee were talking, Hillert came up and appellee asked Hillert if he was going to pay for the cattle. Hillert said no; that Russell had not bought the cattle, and he would have nothing to do with it. This conversation took place on the 27th of July. A few days later appellee called him up and said he was going to ship his cattle, and wished to know where witness wanted them shipped. Witness told appellee that if they were his cattle he believed he would hold them for a while. In the letter that he wrote to appellee he stated that he would rather compromise the matter than have a lawsuit, as he had never been in a court house in his life. Russell further testified that he had no interest whatever in the firm of W. R. Crawford & Company, either as a member or otherwise.

Appellant Hillert testified that he was a member of the firm of W. R. Crawford & Company; that Russell was employed by his firm as cattle salesman, and was hired for that purpose and no other; that he had no authority to purchase the cattle in question and no general authority to purchase cattle for the firm; that W. R. Crawford & Company never participated in the profits or losses on any cattle purchased by Russell, and the latter was in no sense a partner of theirs. Sometimes, for the purpose of having cattle consigned to their yards, they would, in writing, guarantee the payment for cattle which Russell or other cattle buyers purchased. In each instance the firm of W. R. Crawford & Company would receive only their usual commissions. He was in the office on the morning when appellee called Russell over the 'phone. Russell told appellee that he had not bought his cattle; that he would not put up $10.00 on any man's cattle. He did not have any conversation with appellee wherein he stated that they would remit for the cattle. He had the conversation with appellee, in the presence of Russell, when appellee asked him, "What about this cattle business?" and he told appellee that he did not know anything about it. Appellee then asked him if he was going

to pay for them, and he told him no; that he had had nothing to do with them. Two or three weeks prior to this latter conversation, Harned came to his office and stated that Russell had bought some cattle for him, and he wanted $10.00 per head put up on them. Witness told him that he knew nothing about it. Appellee said something about a contract, and witness told him he understood Russell had not bought the cattle.

From the foregoing evidence it will be seen that the question, whether or not Russell bought the cattle in question, depends altogether upon which version of the conversation that took place between him and appellee on June 27th is correct. If appellee's version is true, Russell was bound on the contract; if Russell's version be true, then he was not bound. Where one witness testifies to one state of facts, and another witness testifies to an entirely different state of facts, it cannot be said that there is no evidence upon which to submit the case to the jury, or that the finding of the jury is flagrantly against the evidence.

As to Hillert, however, a different question is presented. There is absolutely no evidence in the record tending to show that Russell and W. R. Crawford & Company were partners in the transaction in question, or that the cattle were purchased for their joint account. Nor is there any testimony from which it could be inferred that Russell was authorized by W. R. Crawford & Company to purchase the cattle for them, or that he had general authority as agent to purchase cattle for them. Appellee bases his whole case against appellant Hillert on the expression, "And he said he would remit for the cattle, or we would remit for the cattle." As Russell was not a partner of the firm of W. R. Crawford & Company, and as he was employed only as a cattle salesman and had no authority to purchase cattle for them, the foregoing expression can not be construed in any other light than a promise of Hillert to pay the debt of Russell. The promise, not being in writing, is within the Statute of Frauds and, therefore, not binding upon Hillert. (Kentucky Statutes, section 470, subsection 4.) We, therefore, conclude that there was no evidence, so far as Hillert is concerned, to justify the submission of the case to the jury, and that the court erred in failing to award him a peremptory instruction.

In instruction one the court submitted to the jury the question, whether or not W. R. Crawford & Company, and D. J. Russell, agreeing to act conjointly and each to have an interest in the profits and losses of the transaction, purchased of the plaintiff the fifty-two head of cattle at 6 1-4 cents per pound, etc. By instruction two the question, whether or not Russell, as the agent of Crawford & Company, purchased the cattle in question without disclosing to the plaintiff his agency, was submitted to the jury; and in the event they so found, they were authorized to find against both Hillert and Russell. In instruction three the jury were told to find against the defendant Hillert if they believed Russell purchased the cattle in question and had no interest in the profits and losses of the purchase, and plaintiff had knowledge of his agency. By instruction three and a half the jury were told to find against the defendant Russell only if he purchased the cattle for himself alone. Instruction four properly defined the measure of damages. Other instructions were given, which it is not necessary to refer to.

The jury stated in their verdict that they found for plaintiff under instruction two, thus basing their conclusion on the idea that Russell made the purchase as the agent of Crawford & Company, without disclosing his agency to plaintiff and without plaintiff's knowledge of such agency. Having held that there was no evidence of Russell's agency or of partnership between Russell and W. R. Crawford & Company to justify the submission of the case as to Hillert, and the case having been tried and decided upon the theory of Russell's undisclosed agency, we conclude that the judgment against Russell alone should not stand. Notwithstanding the fact that the jury may have believed Russell's account of the transaction, their verdict may have been induced by the promise of Hillert to remit for the cattle. As this promise was not made in Russell's presence, and Hillert was without authority from Russell to bind him by such promise, it necessarily follows that the alleged statement of Hillert is not binding on Russell. On the next trial this statement of Hillert's will be excluded from the consideration of the jury, and the court will submit the case to the jury as to Russell alone, giving him the benefit of an instruction to the effect that, if plaintiff made as a condition precedent to the sale that Russell should pay plaintiff $10.00

per head upon the cattle before plaintiff would consummate the sale at 6 1-4c per pound, and Russell refused to agree to this proposition and they declared the sale off, the jury should find for Russell. These instructions, together with an instruction upon the measure of damages similar to that given upon the last trial, will be all the instructions required to present the case to the jury.

Judgment reversed and cause remanded for a new trial consistent with this opinion.